# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DUSTIN RUOCCO,
  *Plaintiff*,

  v.

MAHBOOB ASHRAF *et al.*,
  *Defendants*.

No. 3:21-cv-1635 (JAM)

## INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Dustin Ruocco is a former prisoner of the Connecticut Department of Correction (DOC). While incarcerated, he filed this federal civil rights complaint *pro se* and *in forma pauperis* asserting claims against three prison health officials for deliberate indifference to his serious medical needs. For the reasons stated below, I will allow Ruocco's claims to proceed.

### BACKGROUND

The facts below are drawn from the complaint and assumed to be true only for the purpose of this ruling.

Ruocco entered Bridgeport Correctional Center in March 2021.[1] At that time, he was being treated by multiple doctors in the community to address pinched nerves in his back.[2] Ruocco suffers from a rare blood disorder that causes painful joints and was on a strictly monitored pain management regimen.[3]

After reviewing Ruocco's medical records and examining him, Dr. Vicki Blumberg

---

[1] Doc. #1 at 5 ¶ 2.
[2] *Ibid.* (¶ 1).
[3] *Ibid.*

determined that Ruocco's pain management regimen should be continued.[4] Dr. Blumberg also sought permission for Ruocco to continue to see his own doctors for specialty care and inquired about compassionate release, but both requests were ignored or denied.[5]

After three weeks, Ruocco was transferred to Carl Robinson Correctional Institution (Robinson).[6] He was in extreme pain from carrying his property during repeated transfers.[7] Ruocco then saw Dr. Mahboob Ashraf, who ordered his bloodwork, looked briefly at his medical records, and ordered his pain medication regimen continued.[8] The pain medication was continued for four months, during which time Dr. Ashraf did not examine Ruocco or look at his medical records in more detail.[9]

In mid-July, Ruocco saw APRN Linda Oeser.[10] Ruocco's blood pressure was very high, a condition he attributes to his pain.[11] Oeser doubled one of Ruocco's blood pressure medications.[12] Within two days, Ruocco was "nearly incapacitated" from low blood pressure, so he returned to his original medication dosage on his own.[13] When he expressed concern that his symptoms were being treated rather than his underlying back problems, he was told that the doctors knew what was best for him.[14]

In August 2021, Ruocco saw Dr. Ashraf to renew his pain medication.[15] But Dr. Ashraf

---

[4] *Ibid.* (¶ 2).
[5] *Ibid.* (¶ 3).
[6] *Ibid.*
[7] *Ibid.*
[8] *Id.* at 6 (¶ 4).
[9] *Ibid.*
[10] *Ibid.*
[11] *Ibid.*
[12] *Ibid.*
[13] *Ibid.*
[14] *Ibid.*
[15] *Ibid.* (¶ 5).

and APRN Oeser told Ruocco they were discontinuing his pain medication.[16] Ruocco contends that this "small amount" of pain medication was necessary to afford "just enough pain relief to somewhat function without serious pain at night and when walking or in the sitting position."[17] Ruocco expressed his concerns and objected to being taken off pain medication.[18] In response, Dr. Ashraf ordered that his pain medication be discontinued and increased Ruocco's medical level, which caused him to be transferred to Osborn Correctional Institution (Osborn).[19] Once again, Ruocco had to pack and carry all his belongings during the transfer, even though his "back was killing [him] pain wise."[20]

At Osborn, Ruocco was treated by APRN Viktoriya Stork.[21] Ruocco showed Stork his recent MRI, which showed that his vertebrae were leaning on nerve roots and that he had multiple ruptured and degenerated discs.[22] Stork said she did not care and that she would not renew Ruocco's pain medication.[23] She wanted to administer a saline IV, but Ruocco refused, saying he was not a "lab animal" and that pain medicine had proven effective.[24]

Ruocco remained at Osborn for about seven weeks.[25] His pain prevented him from walking less than a mile back and forth to the dining hall.[26] When he told APRN Stork of his inability to get to the dining hall, she said she did not care and would not renew his pain

---

[16] *Ibid.*
[17] *Ibid.*
[18] *Ibid.* (¶ 6).
[19] *Ibid.*
[20] *Ibid.*
[21] *Ibid.* (¶ 7).
[22] *Ibid.*
[23] *Ibid.*
[24] *Ibid.*
[25] *Ibid.* (¶ 8).
[26] *Ibid.*

medication.[27] Because his pain prevented him from walking to the dining hall, Ruocco remained in his cell and ate food that he purchased during his incarceration at Osborn.[28]

In September 2021, APRN Stork reduced Ruocco's medical level and he returned to Robinson.[29] Yet again, Ruocco was in extreme pain when packing and carrying all of his property during the transfer without any pain medication.[30] After a week, Dr. Ashraf prescribed a neuropathic medication and an antidepressant for his pain, but Ruocco refused to take them because neither drug had worked in the past and his liver was already severely damaged.[31]

Ruocco says that DOC Administrative Directive 8.1 required Dr. Ashraf and nurses Oeser and Stork to provide him with continuity of care and with healthcare services consistent with community standards.[32] He claims the defendants showed deliberate indifference to his medical needs by violating this directive and denying him pain medication notwithstanding his "constant severe pain."[33] He seeks compensatory and punitive damages.[34]

## DISCUSSION

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. In reviewing a *pro se* complaint, the Court must assume the truth of the

---

[27] *Ibid*.
[28] *Ibid*.
[29] *Ibid*. (¶ 9).
[30] *Ibid*.
[31] *Ibid*.
[32] *See* Department of Correction Administrative Directive 8.1: Scope of Health Services Care, at 2, 3, 11 (¶¶ 3A, 4, 11), available at https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD0801.pdf (last accessed on June 8, 2022).
[33] Doc. #1 at 6.
[34] *Ibid*.

allegations, and interpret them liberally to raise the strongest arguments they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

The Eighth Amendment to the U.S. Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Ruocco alleges that the defendants violated the Eighth Amendment by depriving him of pain medication and thereby exposing him to constant, severe pain for several months from the pinched nerves in his back.

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. For purposes of initial review, I find that Ruocco has a serious medical need based on his allegations of constant and severe back pain. *See Carilli v. Semple*, 2021 WL 2515799, at *22 (D. Conn. 2021) ("The denial of pain medication may rise to the level of sufficient seriousness to satisfy the objective prong of the deliberate indifference standard in

some circumstances."); *Riddick v. Maurer*, 2016 WL 7422634, at *3 (D. Conn. 2016) ("severe back pain" can be a serious medical need, "especially if lasting an extended period of time").

The second requirement for a deliberate indifference claim is the culpable state of mind of the defendants. Ruocco must allege facts to suggest that Ashraf, Oeser, and Stork acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. In other words, Ruocco must allege that these health officials were aware of a substantial risk that he would suffer extreme pain when they discontinued or refused to provide him with pain medication. *See, e.g.*, *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Spavone v. N.Y. Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).

Ruocco has also plausibly alleged this prong. Ruocco alleges that the defendants discontinued or denied needed pain medication without examining him or reviewing recent medical records substantiating his complaints of severe and constant pain from the pinched nerves in his back. He further alleges that, over his objections, Dr. Ashraf and APRN Oeser sought to replace the effective pain medication he had been prescribed with other medications that had proven ineffective in the past, and that APRN Stork told him that she did not care about the fact that his back pain was so serious that he could not walk to and from the dining hall.

Although a prison doctor is not deliberately indifferent merely by choosing a different treatment regime than the regime prescribed by the prisoner's former health provider or requested by the prisoner, *see Darby v. Greenman*, 14 F.4th 124, 129 (2d Cir. 2021), that assumes "the prison doctor has considered the prisoner's medical history and the views of the prisoner and nonetheless exercised independent medical judgment to adopt a different

6

medication or treatment regime," *Milner v. Laplante*, 2021 WL 735909, at \*9 (D. Conn. 2021). Here, Ruocco alleges that at both Robinson and Osborn the defendants ignored the evidence of pinched nerves in his recent MRI and disregarded his objections when discontinuing the medication regimen prescribed him by Dr. Blumberg. Under the liberal pleading standard applied to prisoner complaints, this suffices to show that the defendants acted with reckless disregard for the severe and prolonged back pain Ruocco was allegedly suffering. Thus, the Court will permit the claims to proceed for further development of the record.

A substantial question exists, however, as to whether Ruocco exhausted his administrative remedies prior to filing this lawsuit, as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Because I do not yet have enough information about whether Ruocco has sought to exhaust his administrative remedies and whether his claim would be subject to the exhaustion requirement, it would be premature at this time for me to consider whether to dismiss Ruocco's claims for failure to exhaust administrative remedies. *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (noting that "inmates are not required to specially plead or demonstrate exhaustion in their complaints," but that "a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement").

The complaint does not specify whether Ruocco intends to sue the defendants in their individual or official capacities. But Ruocco seeks only damages, and state officials who are sued in their official capacities are immune under the Eleventh Amendment from federal court lawsuits for money damages. *See Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 122 (2d Cir. 2020). Accordingly, I will allow Ruocco's action for money damages to proceed against the defendants only in their individual capacities.

**CONCLUSION**

The claims against defendants Ashraf, Oeser, and Stork will proceed against them in their

individual capacities.

The Court enters the following orders:

(1)      **The Clerk shall** contact the Department of Correction Office of Legal Affairs to

ascertain the defendants' current work addresses, mail a waiver of service of process request

packet containing the Complaint and this Order to each defendant at that address within **twenty-**

**one (21) days** of this Order, and report to the court on the status of the waiver requests on the

thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall

arrange for in-person service by the U.S. Marshals Service on the defendant in his or her

individual capacity and the defendant shall be required to pay the cost of such service.

(2)      **The Clerk shall** send Ruocco a copy of this Order.

(3)      **The Clerk shall** send a courtesy copy of the Complaint and this Order to the

Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)      The defendants shall file their response to the complaint, either an answer or

motion to dismiss, within **thirty (30) days** from the date the waiver forms are sent. If they

choose to file an answer, they shall admit or deny the allegations and respond to the cognizable

claim recited above. They also may include all additional defenses permitted by the Federal

Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed within **five months (150 days)** from the date of this order. Discovery requests need

not be filed with the court.

8

(6)     All motions for summary judgment shall be filed within **six months (180 days)** from the date of this order.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court.  **Failure to do so can result in the dismissal of the case.** The plaintiff must give notice of a new address even if he is incarcerated.  The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(9)     The Clerk shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

It is so ordered.

Dated at New Haven this 8th day of June 2022.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

9